### Eliza Smith, Appellee, v. Illinois Collieries Company, Appellant.

1. Mines and miners—*status of company man so-called.* A company man is entitled to be informed of any dangerous places found in a mine by the mine examiner and the question whether or not the mine examiner failed to mark any dangerous places which he may have found in the roof of such mine, *held*, properly submitted to the jury, although the plaintiff's intestate was working under the direction of the mine manager and was employed for the purpose of making dangerous places safe.

2. Evidence—*effect of leading questions.* Held, in this case that it was error to permit a witness to be examined by means of leading questions.

3. Instructions—*as to question of negligence erroneous.* Instructions upon the question of negligence are erroneous if the negligence upon which a recovery may be awarded is not confined to that charged in the declaration.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Montgomery county; the Hon. Truman E. Ames, Judge, presiding. Heard in this court at the May term, 1909. Reversed and remanded. Opinion filed March 30, 1910.

Jett & Kinder and George P. O'Brien, for appellant.

Lane & Cooper and Zeno J. Rives, for appellee.

Mr. Justice Philbrick delivered the opinion of the court.

This is an action brought by appellee against appellant to recover for the death of her husband, by reason of alleged wilful violation of the provision of the Miners Act by the appellant company, which resulted in the death of her husband.

The trial below resulted in judgment against appellant for $3,500, from which it prosecutes this appeal.

The declaration in this case consists of four counts, being three original counts and one additional. The negligence charged is a wilful violation of the statute by failure to employ a competent mine examiner and for a wilful violation by failure to cause the mine to be inspected and a wilful violation in failing to cause the walls of the room in which appellee's husband was killed to have been marked with the date of the examination by the mine examiner and with a conspicuous mark on dangerous places found by him and the wilful failure to prevent appellee's husband from entering this room of the mine for work without having it made safe before allowing him to enter therein.

The court submitted to the jury the following special interrogatories.

"First. Did the defendant wilfully fail to employ a competent mine examiner at the mine in question on or before the day of the death of the deceased?"

This question the jury answered "No."

"Second. Did the mine examiner wilfully fail to examine the mine on the morning of April 30, 1907?"

This question was answered "No."

"Third. Did the mine examiner of the defendant discover dangerous places in the roof of the room in question on the morning of April 30, 1907, and wilfully

fail to place a conspicuous mark at the dangerous place?"

This was answered "Yes."

"Fourth. Did the mine examiner of the defendant wilfully fail to make a record of the condition of the mine in question as he found the same on the morning of April 30, 1907, in the book kept for that purpose?"

This was answered "Yes."

The answer "No" to the first and second interrogatories eliminated from this cause the charges of negligence that the defendant wilfully failed to employ a competent mine examiner and that the mine examiner failed to examine the mine.

The jury by their special findings to propositions number three and four found that the mine examiner did not mark on the wall of the room or entry the date of his examination, neither did he mark dangerous places he found upon the roof of the mine, and that he failed to make a record of such examination and the result thereof in the book kept for that purpose at the mine, and it is upon these questions that the general verdict was permitted to stand by the trial court.

Appellant contends that the deceased by his employment as a company man for the purpose of making dangerous places safe for miners and others who might be required to enter the mine, assumed as a risk of his employment the danger of the roof falling, as is complained of in this case, and that the proximate cause of the injury was not caused by reason of a failure of the mine examiner either to mark the dangerous places in the roof by conspicuous marks or by reason of a failure to make a record thereof in the book at the mouth of the mine; that the nature of the deceased's employment precludes the contention that it was the imperative duty of appellant to make all places in the mine safe before permitting any person to enter therein, and that this is the rule of law, so far as the requirement of appellant to render the mine safe before persons employed to make dangerous places safe were

permitted to enter, and that deceased assumed all ordinary risks incident to this employment has been determined by the Supreme Court in the case of Kelleyville Coal Co. v. Bruzas, 223 Ill. 596, but notwithstanding appellant was not required to make all places safe, it was the duty of the mine examiner to mark with a conspicuous mark all dangerous places found in the mine by him. In Kelleyville Coal Co. v. Bruzas, *supra,* the Supreme Court said:

"If the mine examiner failed to use reasonable diligence to discover the dangerous places in the entry in question or had not placed a danger signal there or if the mine manager or his assistant had recklessly ordered deceased into places of danger without proper warning, the defendant could have been properly held liable."

The record does not disclose that the mine manager pointed out or indicated to the deceased or the gang with which he was working specifically any dangerous or unsafe places in the roof of this room, or that the result of the examination of the mine examiner was in any way communicated to deceased or the gang he was working with.

The deceased although a company man was entitled to be informed of any dangerous places found by the mine examiner, and if the mine examiner had made conspicuous marks he would have had this information concerning such places, and the question whether or not the mine examiner failed to mark any dangerous places which he may have discovered in the roof of this room was properly submitted to the jury, although deceased was working under direction of the mine manager and was employed for the purpose of making dangerous places safe, he was, nevertheless, entitled to receive and be informed of all dangerous places found by the mine examiner; and it was the duty of the mine examiner to mark these places conspicuously with a chalk mark for the benefit of deceased as well as for other persons who might be required to enter the mine.

The trial court did not err in refusing to direct a verdict for appellant.

The appellant assigns as error the leading examination of the witness, Davis, in regard to his testimony as to whether or not he would have seen a mark put upon the rock if it had been placed there by the mine examiner; this examination of Davis was erroneous and should not have been permitted.

Instructions number one, two and four are subject to criticism but not such as to require a reversal of the judgment.

Instructions number three, six, seven, eight and ten are specifically complained of because they do not confine a recovery to the question of the negligence alleged in the declaration. The plaintiff must be confined to the charges of negligence in the declaration and a recovery cannot be had upon any other negligence although it may be disclosed by the evidence. It was error to give each of these instructions without confining the question of negligence to the negligence alleged in the declaration.

It being necessary to reverse this case upon other questions involved we refrain from discussing the evidence.

For the errors above pointed out, the judgment of the trial court must be reversed and the cause remanded.

*Reversed and remanded.*